**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WIRELESSS MONITORING SOLUTIONS LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | C.A. No. 18-601-GMS |
| AMETEK, INC., | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARDS ....................................................................................... 2

   A.   Rule 12(b)(6) Motions ................................................................................ 2

   B.   Patent Eligibility Under 35 U.S.C. § 101 ................................................ 4

III. THE '893 & '886 PATENT CLAIMS ARE PATENT ELIGIBLE UNDER SEC. 101 .. 8

   A.   The Claims Do Not Recite an Abstract Idea ............................................. 8

   B.   Defendant's Cited Case Law is Distinguishable ...................................... 13

   C.   The '893 & '886 Patent Claims Contain Additional Elements That Transform Any "Abstract Idea" into Patent-eligible Subject Matter .................................... 15

IV.  RECENT CASE LAW REGARDING STEP TWO DEMONSTRATES THAT THIS CASE SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6) ......................... 17

V.   CONCLUSION ................................................................................................. 19

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc*., Appeal No. 2017-1452 (Fed. Cir. 2018) ...................................................................................................................... 17, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2347, 134 S. Ct. (2014) .......................... *passim*

*Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d (Fed. Cir. 2012) ....................... 3, 4

*Bascom Global Internet v. AT&T Mobility LLC*, No. 2015-1763 (Fed. Cir. 2016)..................... 14

*Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 177 L.Ed.2d 792 ......................................................... 4

*Berkheimer v. HP Inc., Appeal No. 2017-1437* (Fed. Cir. 2018)............................................. 4, 16

*Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d (11th Cir. 1997) ............................... 3

*Calif. Inst. of Tech*., 2014 U.S. Dist. WL 5661290 at *5 n. 6 (citing *Ultramercial,* 722 F.3d at 1339) ......................................................................................................................... 8

*California Inst. of Tech. v. Hughes Comm., Inc*., 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014)...................................................................................................... 3, 4

*Campbell v. Wells Fargo Bank*, 781 F.2d (5th Cir. 1986) .............................................................. 3

*Card Verification Solutions, LLC v. Citigroup Inc.*, 2014  U.S. Dist. WL 4922524 (N.D. Ill. Sept. 29, 2014) ............................................................................................................. 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, *Nat'l Ass'n,* 776 F.3d (Fed. Cir. 2014) ...................................................................................................................... 4, 13

*Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, (D.N.J. Aug. 19, 2014).... 4

*DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 155 (Fed. Cir. 2014) .................. *passim*

*DDR Holdings, LLC v. Hotels.com, L.P*., 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013) ............ 5

*Diamond v. Chakrabarty*, 447 U.S. 303, 308, 10 S. Ct. 2204, 65 L.Ed.2d 144 (1981)................. 4

*Diamond v. Diehr*, 450 U.S. 175, 189 n.12, 101 S. Ct. 1048 (1981)........................................... 10

*Enfish, LLC v. Microsoft Corp.*, No. 2015-1244 (Fed. Cir. 2016)......................................... 7, 9, 10

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d (5th Cir. 1982)..................... 3

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d (5th Cir. 1997) ........................................................ 3

*Mayo Collaborative Serv. v. Prometheus Labs.*, Inc., 566 U.S. 66, 132 S. Ct. (2012); ................ 6

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007) ........................................ 2

*Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d (Fed.Cir. 2000).......................... 3

*Recognicorp, LLC v. Nintendo Co., Ltd., 855 F.3d* (Fed. Cir. 2017) ......................................... 13

*Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D.

   Tex. May 15, 2014)................................................................................................................. 4

*Secured Mail Solutions LLC v. Universal Wilde, Inc.* 873 F.3d (Fed. Cir. 2017) ................ 13, 14

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d (Fed. Cir. 2013)................................................ 3, 4, 18

*Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S.Ct. 2870 (2014) ......................... 3

### Statutes

35 U.S.C. §101 ............................................................................................................... *passim*

### Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................................ 6

Plaintiff Wireless Monitoring Solutions LLC ("WM" or "Plaintiff") respectfully files this Opposition to Defendant's Motion to Dismiss For Failure to State A Claim ("Motion") filed by Defendant Ametek, Inc. ("Defendant").

## I.   INTRODUCTION

Defendant's Motion under Section 101 should be denied because the claims of the '893 and '886 Patents are not directed to an "abstract idea."  Defendant's alleged "abstract idea," which is "classifying a value by comparing it to thresholds," is a grossly-oversimplified phrase purposely generated to attempt to fit the narrative of inapplicable case law and invalidate the patent-in-suit under Section 101.

Defendant's argument ignores all of the specific claim elements that enable the functionality Plaintiff's inventive system.  Instead, Defendant restates each of these elements if different, stripped down language, in an apparent attempt to make the claims at issue fit the case law on which Defendant relies.  For example, with respect to the '893 Patent, Defendant mischaracterizes the claim element "assigning, using the one or more configured processors, a status according to the digital value being within a particular range defined by one or more of the plurality of threshold values" as simply "classifying the data."  Motion, at 9.  Defendant's motion is based entirely on paraphrasing, changing, and/or ignoring elements of the claims at issue. Defendant's approach, however, ignores the importance of the very claim language it mischaracterizes.

Defendant's alleged "abstract idea" takes three words from the claims at issue – "value," "comparing," and "threshold" – and adds the word "classifying."  This is precisely the type of overgeneralizing that the Federal Circuit has previously cautioned against.

The elements of the claims at issue illustrate that the patent-in-suit is not merely directed

to an abstract idea; rather, the '893 and '886 Patents are directed to a system that is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.  In this regard, the '893 and '886 Patents are very much like the patent at issue in *DDR Holdings, LLC v. Hotels.com et al.*, 773 F.3d 1245 (Fed. Cir. 2014).  In that case, the Court found that claims drawn to solving problems associated with an Internet business were patent eligible under Section 101.  *Id*. at 1257.

The claims of the '893 and '886 Patents recite tangible components.  The inventions recited therein overcome problems specifically arising in the realm of computer networks.  The claims at issue neither involves a building block of ingenuity, nor does they monopolize a fundamental financial or business idea.  They also do not merely recite functionality that could be performed by human hand.  The recited inventions also improve an existing technological process.  In short, all of the factors of the Alice decision, and the analysis under Section 101, point to the patent eligibility of the claims of the patent-in-suit.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Motions

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007).  In the Third Circuit, the District Court, in deciding a motion under Fed.R.Civ.P. 12(b)(6), is required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to non-moving party.  *Jeanne Phillips v. County of Allegheny et al.*, No. 06-2869 (3d Cir. February 8, 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Further, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend the complaint.

*Id*. (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter… because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013) (vacated on other grounds by sub nom. *Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S. Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).

Although ineligibility under §101 is a question of law, it is "rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d at 1338-39 (Fed. Cir. 2013); *The California Inst. of Tech. v. Hughes Comm., Inc*., 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014). And, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech*., 2014 U.S. Dist. WL 5661290 at *5 n. 6 (citing *Ultramercial*, 722 F.3d at 1339); also *Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

In *Berkheimer v. HP Inc*., Appeal No. 2017-1437 (Fed. Cir. Feb. 8, 2018), the Federal Circuit held that questions of fact underline patent eligibility determinations. The Court held that "[t]he second step of the Alice test is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the

industry." Ex. B (Slip op.), at 12 (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*., 776 F.3d 1343, 1347-48 (Fed Cir. 2014) quotations omitted).

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.

*Id.* (citations omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

35 U.S.C. § 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Section 101 sets forth four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter. Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has identified three exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). The basis for these exceptions is that patenting basic tools of scientific and technological work, which the Supreme Court referred to as the building blocks of ingenuity, would tend to impede innovation rather than to promote it. *Id.*

However, all inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves an abstract concept. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2347, 134 S. Ct. 2347, 2354 (2014). Although patenting a building block of ingenuity would risk disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no

comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354-55.

"Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive a liberal encouragement.'" *Id.* (citing 447 U.S. at 308-309, 100 S. Ct. 2204); see *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013). Also, it is well-known that issued patent claims carry a statutory presumption of validity. *DDR Holdings*, 954 F.Supp.2d, at 525. And, that presumption applies when §101 is raised as a basis for challenging validity in district court proceedings. *Id.*

More recently, in regard to abstract ideas, the Supreme Court has stated that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014)* (citation omitted). Consequently, the Supreme Court has required that "[i]f there is to be invention from such a discovery, it must come from the application of the law of nature to a new and useful end." *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). The Supreme Court in *Alice* warned that courts must "tread carefully in construing this exclusionary principal [of patent eligibility] lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (citation omitted).

*Alice* presents a two-step test for determining patent eligibility. The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355. If the Court finds that the patent is not directed to a patent ineligible concept, i.e., the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied. If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to

'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs*., Inc., 566 U.S. 66, 132 S. Ct. 1289, 1294, 1298 (2012); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 155 (Fed Cir. 2014). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea. *Id*.

When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id*. at 2355. Here, a court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (citing *Mayo*, 566 U.S. at 78-79). Alice called this second step the "search for an 'inventive concept' - i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (citing *Mayo*, 566 U.S. at 72-73).

In the Federal Circuit's decision in *DDR Holdings,* 773 F.3d at 1248. In *DDR Holdings*, the Federal Circuit addressed whether claims directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were patentable. 773 F.3d at 1248. After analyzing relevant precedent, the Court began the two-step analysis by finding that the asserted claims did not recite a mathematical algorithm, or a fundamental economic or longstanding business practice. *Id*., at 1257. Furthermore, the Court found that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id*. The Court held that the claims stood apart from prior cases because the claims were addressing a problem particular to computer

technology:

> But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id*.  Inventions are therefore patentable under §101 if the claims do not attempt to preempt every application of an idea and instead recite a specific way of solving a computer-based problem.  *Id*., at 1259.  The Federal Circuit then held that the claims directed to the software implemented invention were patent eligible under §101.  *Id*.

More recently, the Federal Circuit has confirmed that under *Alice*, claims directed to software, in many instances, recite patent eligible subject matter.  In *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244 (Fed Cir. May 12, 2016), the Federal Circuit analyzed the patent eligibility of claims directed to data stored in a table in what was called a "self-referential" model.  The arrangement of data distinguished over tables adhering to a "relational" model.  The Court noted that *Alice* could not be read:

> to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two [of Alice]. Indeed, some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as chip architecture, and LED display, and the like.  ***Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract and therefore only properly analyzed at the second set of the Alice analysis.  Software can make non-abstract improvements to computer-related technology just as hardware improvements can***. . . . Therefore, we find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.

*Id*. at 11 (Emphasis added).  The Court recognized that improvements to computer-related technology can encompass improvements to the functioning of a computer itself ***or improvements to an existing technological process***.  *Id*. at 10.  The Court found that where the focus of claims is on an improvement to computer functionality, and not on economic or other tasks for which a

computer is used in its ordinary capacity, the claims are not directed to an abstract idea within the meaning of *Alice*.  *Id*. at 12.  The Court also noted that the district court had erred in stripping down the claims to a bare concept.  *Id*. at 14.

> The district court concluded that the claims were directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" or, more simply, "the concept of organizing information using tabular formats. . . .  However, ***describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.***

*Id*.  (Emphasis added).  The claims were not directed to just any form of storing tabular data, but instead were specifically directed to a self-referential table for a computer database.  *Id*.  "In finding that the claims were directed simply to 'the concept of organizing information using tabular formats,' . . . the district court oversimplified the self-referential component of the claims and downplayed the invention's benefit."  *Id*. at 15.  Because the claims recited more than simply performing a well-established business practice or an abstract mathematical formula on a general purpose computer, they were determined to be non-abstract under *Alice*.  *Id*. at 16-17.  And, it did not matter that the invention was able to run on a general-purpose computer or that the improvement was not defined by reference to physical components.  *Id*.

## III.    THE '893 AND '886 PATENT CLAIMS ARE PATENT ELIGIBLE UNDER SECTION 101

### A.    The Claims Do Not Recite an Abstract Idea

Defendant's Motion should be denied because, when the facts are liberally construed in favor of Plaintiff, Defendant does not satisfy its high burden of proving patent ineligibility by clear and convincing evidence. The claimed invention is patent eligible under Section 101 because the claims of the '893 and '886 Patent do not recite an abstract idea.  Defendant contends that the claims are directed to the patent-ineligible concept of an abstract idea – "classifying a value by

comparing it to thresholds."   This, however, is a mischaracterization of the claims at issue, obviously aimed at trying to change the claim wording to match case law Defendant relies upon. When the claim language is fully considered, it is apparent that the claims are not directed toward an abstract idea.  The claims do not merely recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function. Instead, the claims are rooted in computer technology and improvements to a technological process.

Defendant seeks to boil down the claims at issue to "receiving data," "comparing that data to threshold values," "classifying the data," and "communicating the resulting data." Based on this mischaracterization, and completely ignoring other claim language, Defendant then argues that the claims are abstract because they are nothing more than the basic steps of receiving and classifying information.  Motion, at 8.  Defendant's argument, however, utterly ignores the effect of all of the elements and limitations recited in claims.  For example, Claim 1 of the '886 Patent recites (among other things):

- a circuit monitoring device for monitoring individual circuits having at least one field device which is configured to provide a measured electrical parameter . . .

- a processor . . . electrically coupled to the circuit which is configured to receive the measured electrical parameter . . .

- compare a digital value, which corresponds to a magnitude of the measured electrical parameter, to at least one threshold value stored in the memory, wherein the threshold value defines at least one range of digital values

- assign a status based on the digital value being within the particular range defined by the threshold value

- a communication module configured to generate a status signal including the assigned status

- a transmitter configured to transmit the status signal to a remote computing system over a network for output, by the remote computing system, of the status

'886 Patent, Claim 1.  Claim 30 of the '893 Patent includes similar elements and limitations.

Defendant ties "receiving data" to the second of these elements.  Even that element, however, recites more than simply receiving any type of information.  It is directed to receiving a "measured electrical parameter."  Defendant ties "comparing that data to a threshold" to part of the third element – "compare a digital value, which corresponds to a magnitude of the measured electrical parameter, to at least one threshold value."  First, this is not comparing the received data (measured electrical parameter) to a threshold.  Rather, it is comparing a digital value corresponding to the measured electrical parameter to the threshold.  Second, Defendant ignores the remainder of this element – "wherein the threshold value defines at least one range of digital values."  Defendant equates "classifying the data" with the fourth element.  This element, however, is not directed to classifying data (i.e., the measured electrical parameter).  Rather, this element is directed to assigning a "status" – i.e., a status of the circuit – based on the digital value being within a certain range of values.  Finally, Defendant links "communicating the resulting data" to the last two elements.  These last two elements, however, are not directed to communicating the data (i.e., the measured electrical parameter).  Rather, they are directed first toward generating a status signal that includes the assigned status, and second toward communicating that signal to a remote computing system which then outputs the status.  Defendant's "communicating the resulting data" is simply wrong.  Defendant's characterization also ignores the creation of a status signal based on the digital value and the output of the status from a remote computing system.  Defendant makes the same slipshod comparisons with respect to the elements of Claim 30 of the '893 Patent.

Defendant, of course, relies heavily on the *Alice* decision.  *Alice*, however, did not deal directly with software or computer-related inventions and most certainly did not hold that software and/or computer related inventions could not present patent eligible subject matter.  The Court was concerned with distinguishing patents that "claim the 'building[g] block[s]' of human ingenuity

which are ineligible for patent protection, from those that integrate the building blocks into something more." *Id*. at 2350.  Moreover, in *Enfish*, the Federal Circuit unambiguously recognized that software inventions may recite patent eligible subject matter if it improves computer functionality ***or an existing technological process***.  *Enfish* at 11.

In *Enfish*, the Federal Circuit found it "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis." *Enfish* at 11.  If "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity", then the claim should be held to not be an abstract idea.  *Id*.

Defendant's generalization and mischaracterization of the '886 and '893 Patent claims is exactly what the Federal Circuit and Supreme Court have previously warned against. "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."  *Enfish* at 14; see also, *Alice*, 134 S. Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law"); cf. *Diamond v. Diehr*, 450 U.S. 175, 189 n.12, 101 S, Ct, 1048 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious")

Defendant's oversimplification of claim elements ignores components such as "transmitting signals," "circuit monitoring devices," "processors," and "remote computer systems over a network for output."  Moreover, Defendant's oversimplification ignores what is being "retrieved," what is being "processed," what is doing the "processing," what the result of the

"processing" is, what signals are being generated, what is being compared, and what is being transmitted.  Defendant cannot turn a blind eye to these limitations and pretend they do not exist.

What cannot be overlooked in this instance is that the totality of Defendant's evidence and argument that claims 1-39 of the '893 Patent and claims 1-54 of the '886 Patent are directed to an "abstract idea" is its own characterization of claims as being directed to the bare concept of "classifying a value by comparing it to thresholds."  That is all there is.  Defendant has failed to satisfy the heavy burden of showing, by clear and convincing evidence, that claims 1-39 of the '893 Patent and claims 1-54 of the '886 Patent are directed to an "abstract idea."

The '893 Patent and '886 Patents improve the functioning of circuit monitoring devices and provide a solution to a technological problem arising within the realm of security/building management systems. See *DDR Holdings, LLS v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014).  The Supreme Court and the Federal Circuit have recognized that patent claims that "improve the functioning of [a] computer itself," or "effect an improvement in any other technology or technical field" rarely fall afoul of §101 for abstractness.  *Alice Corporation Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014); *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010) ("Indeed, this court notes that inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act.").

In *DDR Holdings*, the Federal Circuit found claims to be patent eligible which were similar in scope and breadth to the claims of the '893 Patent and '886 Patent.  In that case, claim 19 of U.S. Patent No. 7,818,399 was at issue and was analyzed in the context of Section 101.  Claim 19 of the '399 Patent recited a system that, upon activation of a hyperlink, would find product information from a remote source and combine that information with elements from the original

webpage. The combined information would then be displayed to the user on the original web page. The Federal Circuit first noted that, unlike the claims in Alice, the claims of the '399 Patent did not recite a mathematical algorithm or a fundamental or longstanding economic commercial practice. *DDR Holdings*, 773 F.3d 1245, at 1257. The court stated that the claims were distinct from "the routine, conventional functioning of Internet hyperlink protocol, [where a user] would be instantly transported away from a host's website after "clicking" on an advertisement and activating a hyperlink." *Id.* As in *DDR Holdings*, the claims in the instant case are distinct from the routine operations of "retrieving, processing, decoding, and sending data."

### B.    Defendant's Cited Case Law is Distinguishable

Defendant attempts to draw parallels between the '893 Patent and '886 Patent and Federal Circuit case – *Content Extraction*. Yet, the claims in that case are readily distinguishable from the claims of the '893 Patent and '886 Patent. In *Content Extraction*, as acknowledged by Defendant, the claims were limited to extracting data from hard copies, and recognizing and storing the information. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1345 (Fed Cir. 2014); see also Motion, at 11.

The Defendant's reliance on *Content Extraction* is misplaced. In that case, the plaintiff sued multiple banks for patent infringement based on ATMs that reviewed checks, recognized relevant data such as the amount, account number, and identify of account holder, and stored that information in their records. The Court found the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory to be well-known. Here, however, the claims at issue involve far more than simply collecting, recognizing and storing data.

Defendant also relies on *CyberFone*. Yet, the claims in that case are also distinguishable

from the claims of the '893 and '886 Patents.  In *CyberFone,* the Court found the patent claim involved to be an abstract idea because it recited a well-known concept of categorical data storage. The claims in *CyberFone* merely made the originally-gathered information accessible to different destinations *without changing the content or classification of that information*.  The instant claims, however, do not involve categorical data storage.  Rather, the instant claims recite elements that involve changing the content and classification of information, and assigning a status to a circuit based on a digital value corresponding to a measured parameter being within certain ranges of digital values.

Defendant also cites *Intellectual Venture*.  But, that case is also not instructive with respect to the claims at issue.  Defendant reliance of *Intellectual Ventures* is misplaced because the Plaintiff in *Intellectual Ventures* brought action alleging infringement of patent.  The claims in *Intellectual Ventures* were directed to entering, breaking down, and organizing data into a computer database.  Defendant's reliance on *TLI Communications* is similarly misplaced.  That case involved claims directed to taking, transmitting, and organizing digital images (i.e., capturing and organizing data).  Again, the instant claims involve far more than entering and organizing data.

Likewise, Defendant's reliance on *Smart Systems Innovations* is inapplicable here.  The claims in that case were directed to financial transactions involving the mere collection, analysis, and classification of information. As already illustrated above, however, the instant claims involve far more than classifying data.

In summary, none of Defendant's cited cases is applicable to the instant claim.  And, the only way Defendant can attempt to draw parallels between its cited cases and the instant claims is to reword and ignore recited elements and limitations.

C.      **Defendant's "Human Hands" Argument is Untenable**

In an effort to bolster its weak position, Defendant argues that "humans and electronic devices inherently perform these methods of classifying information." Motion, at 11. Defendant likens the claims at issue to thermometers and tire pressure devices. First, it is disingenuous for Defendant to imply that the elements of the claims at issue could be performed by human hands. Without hardware and software, humans cannot duplicate electronic circuits, measure electrical parameters, generate a digital value corresponding to a measured electrical parameter, compare a digital value with a range of digital values, or assign a status that is incorporated into an electrical signal which is transmitted to a remote computer for output of the status. Second, to the extent that Defendant is arguing that the claims recite nothing more than routine devices or their functionality, that argument would apply (if at all) to the second *Alice* step – not to whether the claims are directed to an abstract idea under the first *Alice* step. Third, none of the devices that Defendant points to include all of the hardware and functionality recited in the claims. Defendant's devices are missing virtually every element of the claims at issue. Again, the only way Defendant can hazard its argument with respect to "humans" and "electronic devices" is to ignore all of the claim elements and take the position that the claims are directed to simply "classifying information." This is nonsense. If the inventor wanted to try to claim "classifying information," he could have done so with those words alone. Alice does not stand for the proposition that one can ignore virtually all of the language of a claim, boil it down to a few words, and then equate those words to a known device in order to determine patent eligibility.

### D.    The '893 Patent and '886 Patent Claims Contain Additional Elements That Transform Any "Abstract Idea" into Patent-eligible Subject Matter

Even if the Court finds that the '893 Patent or '886 Patent directed to an abstract idea, the '893 Patent and '886 Patent provides an inventive concept in the application of the abstract idea such that the elements of each claim both individually and 'as an ordered combination' transform

the nature of the claim into a patent-eligible application.  See, e.g., *Bascom Global Internet v. AT&T Mobility LLC*, No. 2015-1763, 13-14 (Fed. Cir. 2016) ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*, 134 S. Ct. at 2355).

If the Court determines that the claims are directed to an "abstract idea," then the analysis turns to step two of *Alice*.  The second step involves determining whether additional elements of the claim transform the nature of the claim into a patent-eligible application of that abstract idea. *Alice Corp.*, 134 S. Ct. at 2357.

Defendant's argument with respect to the second *Alice* step is to point to the hardware components of claims 1-39 of the '893 Patent and claims 1-54 of the '886 Patent and simply argue that these components are "classifying values based on thresholds using admittedly conventional techniques" and "generic."  Motion, at 13.  Defendant also adds that the components of the '893 Patent and '886 Patent claims are "conventional circuits."  Motion, at 13 (citing *Alice*, 134 S. Ct. at 2359).  These arguments ignore the express language of the claim elements.  As is apparent from the claim language, the additional elements and limitations recite much more than a "generic hardware, a threshold, and a conventional circuit."

Defendant's strategy here is the same as it is with respect to the first *Alice* step.  That is to strip each element of the majority of its wording, and then argue that what remains is generic.  The language Defendant ignores, however, counters Defendant's argument that the '886 Patent claims and '893 Patent claims are nothing more than generic.  There is nothing generic, however, about a processor being electrically coupled to a circuit to receive a measured electrical parameter from a field device on that circuit.  There is nothing generic about comparing "a digital value, which corresponds to a magnitude of the measured electrical parameter, to at least one threshold value

stored in the memory, wherein the threshold value defines at least one range of digital values."
There is nothing generic about a processor that is configured to "assign a status based on the digital
value being within the particular range defined by the threshold value."  There is nothing generic
about a communication module configured to "generate a status signal including the assigned
status."  And there is nothing generic about "a transmitter configured to transmit the status signal
to a remote computing system over a network for output, by the remote computing system, of the
status."  All of these elements reflect specialized hardware and software and, even if the claims
are directed to an "abstract idea," transform that idea into something more – patent eligible subject
matter.  These elements and others reflect the improvement to the functioning of multiple
computers and the solution to a technological problem.  In other words, the '893 and '886 Patent
claims, even if directed to an abstract idea, are patent eligible according to the second *Alice* step.

Defendant makes its "generic" argument by cherry picking certain well-known terms from
the elements and ignoring the remaining limitations.  Simply because a claim element contains a
component or word that is conventional does not make the claim element "conventional" as a
whole.  Further, Defendant's entire strategy in arguing the second step of *Alice* is to take the
elements one at a time.  This improperly ignores the mandate that the additional claim elements be
considered together to determine whether they lend patent eligibility to an abstract idea.
Defendant's arguments concerning the remainder of the claims are deficient for the same reasons.

## IV.     RECENT CASE LAW REGARDING STEP TWO DEMONSTRATES THAT THIS CASE SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(B)(6)

In *Berkheimer v. HP Inc.*, Appeal No. 2017-1437 (Fed. Cir. Feb. 8, 2018), the Federal
Circuit held that questions of fact underline patent eligibility determinations. The Court held that
"[t]he second step of the Alice test is satisfied when the claim limitations involve more than
performance of well-understood, routine, [and] conventional activities previously known to the

industry." Ex. B (Slip op.), at 12 (quotations omitted). The Court elaborated:

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.

*Id.* (citations omitted).   The Federal Circuit determined that the district court had erred in

concluding that there were no underlying factual questions concerning the Section 101 inquiry.

*Id.* at 14.   The Federal Circuit recognized that that questions relating to the second *Alice* step

depend upon factual determinations.

> Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.  The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

*Id.* at 14.

Similarly, in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, Appeal No. 2017-1452

(Fed. Cir. 2018) (slip opinion attached as Exhibit A), the Federal Circuit held that the district court

erred in applying the Alice two-step validity test before the plaintiff had an opportunity to present

allegations which would have materially affected the application of the *Alice* test.

> The district court erred to the extent it determined that claim 1 of the '615 patent is ineligible because it is not directed to a tangible embodiment. The district court granted this Rule 12(b)(6) motion without claim construction. We have some doubt about the propriety of doing so in this case but need not reach that issue because it did err when it denied leave to amend without claim construction and in the face of factual allegations, spelled out in the proposed second amended complaint, that, if accepted as true, establish that the claimed combination contains inventive components and improves the workings of the computer.

*Id.* at 6.  *Aatrix* further held that "it remains true after *Alice Corp. Pty. v. CLS Bank International*,

134 S. Ct. 2347 (2014), that '[a] § 101 analysis begins by identifying whether an invention fits

within one of the four statutorily provided categories of patent eligible subject matter.'" Id.

(quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014)).  In *Aatrix*, the

Federal Circuit stated that Claim 1 of the '615 Patent met the requirement of patent eligibility:

> Like many claims that focus on software innovations, it is a system claim. It claims
> a data processing system which clearly requires a computer operating software, a
> means for viewing and changing data, and a means for viewing forms and reports.
> **This is very much a tangible system.**

*Id*. at 6-7 (emphasis added and footnote omitted).    Given these recent decisions, Plaintiff

respectfully submits that it is improper to dismiss this case based on Section 101 in the context of

a Rule 12(b)(6) motion.    In this case there are, at a minimum, underlying factual questions

concerning whether the claimed elements and limitations constitute an inventive concept, alone or

in combination with other elements, sufficient to survive a Section 101 challenge.  *Id*. at 8.

## V.    CONCLUSION

The claims of the '893 Patent and '886 Patent are not directed to an abstract idea and

cannot be properly boiled down to "classifying a value by comparing it to thresholds" as

Defendant would contend.  Defendant has wholly failed in its heavy burden to present facts and

arguments as to why this Court should adopt a bare conclusion that the claims at issue are

directed to this alleged, stripped-down concept.  Even if the Court determines that the claims are,

in fact, directed to an abstract idea, the claims recite additional elements and limitations that

transform that abstract idea into something patent eligible – and something that does not impinge

on the free use of any fundamental building blocks of human ingenuity.  Moreover, Defendant's

Motion is based almost completely on rhetoric and gross oversimplification of claim terms.  Each

section of Defendant's Motion ignores limitations of the very claim element at issue and,

particularly with respect to the second *Alice* step, Defendant's arguments ignore the additional

claim elements as a whole.  For at least the foregoing reasons, Defendant's Motion should be

denied.

Dated:  August 24, 2018            STAMOULIS & WEINBLATT LLC

                                   */s/ Stamatios Stamoulis*
                                   Stamatios Stamoulis (#4606)
                                   Two Fox Point Centre
                                   6 Denny Road, Suite 307
                                   Wilmington, DE 19809
                                   (302) 999-1540
                                   stamoulis@swdelaw.com

                                   *Attorneys for Plaintiff*

## **Certificate of Service**

I hereby certify that on August 24, 2018 I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jay Johnson*
Jay Johnson